THE STATE OF OHIO, APPELLEE, *v.* WRIGHT, APPELLANT.

(No. 80-C-65—Decided February 2, 1982.)

*Mr. Robert S. Hartford, Jr.,* for appellee.

*Mr. Nils P. Johnson, Jr.,* for appellant.

DONOFRIO, J. Appeal from the Court of Common Pleas, Columbiana County.

The defendant-appellant, Joseph A. Wright, was indicted by the Columbiana County Grand Jury on May 30, 1980 on a secret indictment, alleging as follows:

"* * * did, as a father charged with the maintenance of legitimate or illegitimate children under the age of eigh-

teen years, who are recipients of aid, pursuant to Chapter 5107 or 5113 of the Ohio Revised Code, neglect or refuse to pay such Board or department, the reasonable costs of maintaining such child when he is able to do so, by reason of property, labor or earnings, to-wit: Joseph Andrew Wright has failed to pay the Columbiana County Welfare Department maintenance costs for his legitimate or illegitimate children, a violation of Section 3113.06 of the Ohio Revised Code, and subjecting defendant to the penalties found in Section 3113.99(B) of the Ohio Revised Code."

On November 25, 1980 the jury returned a verdict of guilty. The appellant received a sentence of six months in the state reformatory at Mansfield. From this judgment he appeals.

The evidence presented at the trial indicated that Debbie Rae Wright and appellant were married on February 15, 1970. Two children were born as the issue of this marriage, Joseph Albert Wright and Robert Lee Wright. Joseph was nine years of age and Robert was eight years of age at the time of the trial. Although neither party had ever filed for or obtained a divorce, they had been living separate and apart since March 1, 1973. Mrs. Wright testified that she had spoken with an attorney but could never afford the retainer for a divorce. Shortly after leaving her husband's home, the wife took up residence in a "live-in" status with one Russell Gaskill, with whom she has given birth to a third child not at issue herein. From the time she moved into Mr. Gaskill's residence she has remained under his roof at various addresses. Mrs. Wright, further, testified that she and her children had, at various times since her separation from her husband, received benefits from the Columbiana County Welfare Department. Mrs. Wright also testified on redirect examination that her husband held numerous jobs and was physically able to work during the period of time when she lived with him.

The record in this case indicates that the appellant's two minor sons received $6,791 in benefits from the Columbiana County Welfare Department between June 1, 1977 and April 30, 1980. The records for the children and Mrs. Wright prior to June 1977 were destroyed in a fire. The evidence in this case also indicated that the appellant had advised the welfare department, in July 1978, that he was unable to contribute to the support of his children because he was suffering from a coronary condition. The appellant, however, testified at the time of trial that the reason he was unable to support his children was due to a back injury which he suffered in 1977.

Appellant's first assignment of error states:

"The court below erred in not finding Revised Code 3113.06, the statute under which appellant was convicted, unconstitutional.

"a. Revised Code 3113.06 is unconstitutional in that it constitutes imprisonment for debt.

"b. Revised Code 3113.06 is unconstitutional in that it denies Appellant due process of law.

"c. Revised Code 3113.06 is unconstitutional in that it impermissibly imposes a lesser standard of conduct on women than men, thereby denying Defendant the equal protection of the law."

First, the appellant claims that the statute in question is unconstitutional in that it constitutes imprisonment for a debt. In this regard, he relies on Section 15, Article I of the Ohio Constitution, which reads as follows:

"No person shall be imprisoned for debt in any *civil action, on mesne* or *final process,* unless in cases of fraud." (Emphasis added.)

This constitutional provision does not apply to the instant case. This case proceeded by way of a grand jury indictment for a violation of R.C. 3113.06, failure to pay maintenance costs, a felony of the fourth degree. The appellant, therefore,

has been sentenced for the violation of a criminal statute, and is not being imprisoned for a debt in a "civil action" as is prohibited by Section 15, Article I, of the Ohio Constitution. The appellant was not sued by either the Columbiana County Welfare Department or the state of Ohio for the recovery of funds expended for the support of his children.

Furthermore, the courts of this state have held that the payment of support for one's dependents is a duty imposed by law, as opposed to a civil debt. The Ohio Supreme Court held, in the case of *Bowen* v. *State* (1897), 56 Ohio St. 235, at 239, that:

"The duty is primarily devolved on the father to support his minor children out of his property, or by his labor. * * * This is a duty which he owes to the state, as well as to his children; and he has no more right to allow them to become a public charge than he has to allow them to suffer for want of proper care and sustenance."

The appellant appears to rely on the case of *State* v. *Ducey* (1970), 25 Ohio App. 2d 50 [54 O.O.2d 80]. That case, in fact, supports the position of the appellee on this issue. The statute in that case was very similar to R.C. 3113.06 and the court held that:

"Imprisonment imposed for a violation of R.C. 2151.42, making it an offense for a person charged with the care, support, maintenance, or education of a child to fail to do so, is not imprisonment for debt and, therefore, R.C. 2151.42 and R.C. 2151.99 are not in violation of Section 15, Article I, * * *." *Id.*, paragraph one of the syllabus.

R.C. 3113.06, which creates the obligation upon appellant to reimburse the Columbiana County Welfare Department, is in actuality, although indirectly, the same obligation of appellant to support his children.

Secondly, the appellant claims that the statute in question is unconstitutional in that it denies him due process of law and is unconstitutionally vague.

The record indicates that he was notified in 1978 of the fact that his wife was receiving ADC benefits for his children. The appellant elected not to avail himself of contesting the wife's custody of the children and, therefore, her right to receive ADC benefits for them, by way of a divorce proceeding or otherwise.

Appellant claims that the statute is "impermissibly vague." He maintains that the terms "reasonable cost" and "neglect or refuse" are not defined. R.C. 1.42 reads in part as follows:

"Words and phrases shall be read in context and construed according to the rules of grammar and *common usage.*" (Emphasis added.)

The phrases that are complained of are not so technical or vague as to be unconstitutional. The determination of whether or not the costs paid by the welfare department were reasonable should be left to the decision of a jury. The evidence in this case indicated that the two children were receiving a total of $216 per month. The evidence further indicated that the children had received total benefits between June 1, 1977 and April 30, 1980 of $6,791. The costs paid appear reasonable.

Finally, the appellant maintains that the statute in question is unconstitutional in that it imposes a lesser standard of conduct on women than on men. We hold this matter should not be reviewed by this court as it was not raised at the trial of this case or at either pre-trial or post-trial hearings. The issue of the constitutionality of the statute was first raised at the appellant's motion for a directed verdict at the close of the evidence. At no point during that argument was the question of sex discrimination raised, nor was the trial court given an opportunity to rule on that question. The general rule in Ohio is that a reviewing court will only consider such errors in the lower court as were preserved by objection, ruling, or other-

wise. 4 Ohio Jurisprudence 3d, Appellate Review, Section 137, and fn. 15.

For the foregoing reasons we overrule appellant's first assignment of error.

Appellant's second assignment of error states:

"The decision of the jury below and the refusal of the trial judge to direct a verdict were improper in that the state offered no evidence to show that defendant was able to make reimbursement payments by virtue of his property, earnings or labor."

In this assignment of error the appellant claims that the burden of proof is on the state of Ohio to prove that the appellant was able to pay maintenance costs by reason of property, labor or earnings. Appellant claims that lack of ability to pay is not an affirmative defense which places the burden of proof to pay on the appellant.

R.C. 2901.05(C) defines affirmative defenses and places the burden of proving such affirmative defenses upon the defendant by a preponderance of the evidence. That section reads in pertinent part:

"(C) As used in this section, an 'affirmative defense' is either of the following:

"(1) A defense expressly designated as affirmative;

"(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

R.C. 3113.06 does not contain an affirmative defense that is specifically designated as an affirmative defense. However, the lack of ability to pay maintenance costs is an excuse or justification peculiarly within the knowledge of the accused and on which he can fairly be required to adduce supporting evidence. Hence it is an affirmative defense.

R.C. 3113.06 is analogous to R.C. 2919.21, non-support of dependents. R.C. 2919.21(B) specifically designates lack of ability to support as an affirmative defense. The obvious intent of making it a specifically designated affirmative defense is that the defendant's lack of ability to pay is within his knowledge and not the state's.

To place upon the state the burden of proving that the defendant is able to pay is unreasonable. Much of the information which the state would need to prove such ability to pay is either protected by privacy laws or protected by his Fifth Amendment right against self-incrimination. The appellant himself has knowledge of where and when he worked, how much he earned, the extent of his property, and what other expenses he had. He can fairly be required to adduce such evidence to support an affirmative defense of lack of ability to pay.

We, therefore, overrule appellant's second assignment of error.

Appellant's third assignment of error states:

"The court below erred in disallowing evidence of defendant's physical custody of his children and in denying the defendant's charge on that issue as satisfying his duty to support his children.

"a. An isolated period may not be selected for prosecution of a divorced husband for failure to pay maintenance costs; the defendant is entitled to show the overall circumstances regarding the circumstances of his children."

The appellant complains in his third assignment of error that the trial court erred in not permitting him to introduce evidence that for a period of time prior to the time listed in the indictment the appellant had custody of the parties' children and therefore was providing adequate support to those children. He further contends that the court erred by not allowing certain jury instructions relating to that support.

The appellant relies on the case of *State* v. *Oppenheimer* (1975), 46 Ohio App. 2d 241 [75 O.O.2d 404]. That case construes R.C. 2919.21, non-support of dependents. The court held, *inter alia,*

that the trial court could not limit testimony or evidence from the defendant of support he had provided to his minor children prior to the time listed in the indictment. In that case the defendant was charged in a criminal complaint for failure to provide adequate support for his children for a *four-month period* of time in 1974. There the defendant and his wife had been divorced in January 1973. The defense in that case offered evidence that prior to the time of the four months listed in the indictment, the defendant had paid support for the children and had entered into a bond for support. It was evident from the evidence that this was an effort by the complaining witness to enforce the support contained in the divorce decree and not to enforce any criminal liability.

The *Oppenheimer* case construes R.C. 2919.21, which places criminal liability on a parent for not supporting his or her legitimate children. Appellant in the instant case was not indicted for failure to pay support for his legitimate or illegitimate children. Appellant was indicted for failing to pay to the welfare department the money it expended for maintaining his children. The offense is against the county welfare department not against his children. Indeed, R.C. 3113.06 places venue of the statute in the county in which the board or department which paid is located. The statute under which appellant was indicted also mandates that the board or department file charges against any parent who violates this section. The legislative intent of the statute then is to recover for the county welfare department or the state of Ohio money it has expended under R.C. Chapter 5107 or 5113 to maintain someone's child.

The evidence produced at trial indicates that for the period of time listed in the indictment the appellant did not pay any support to the complaining witness. More importantly, the evidence shows that he neglected to pay the Columbiana County Welfare Department the reason-able costs of maintaining his children during that period of time.

The trial court properly kept from evidence testimony of the appellant's prior support paid for his children and custody of those children prior to the time listed in the indictment because such evidence was not relevant to his refusal or neglect to pay the reasonable cost of maintaining his children during the period of time that they were receiving ADC payments.

For the foregoing reasons we overrule appellant's third assignment of error.

Appellant's fourth assignment of error states:

"The court below erred in its prejudicial comments in the presence of the jury during the trial of the case."

We find that the trial judge's comments were not prejudicial when considered under the test as set forth in *State v. Wade* (1978), 53 Ohio St. 2d 182 [7 O.O.3d 362].

The *Wade* doctrine holds that the following rules apply in determining whether or not a trial judge's remarks were prejudicial:

"* * * (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *Wade, supra,* at 188.

A careful examination of the record indicates that none of the five comments by the trial court satisfies any of the tests as set forth in the *Wade* case. Furthermore, the trial court gave a very precise corrective instruction to the jury, as recommended under point two of the *Wade* test, prior to the introduction of any evidence. In this instruction the court indicated that Mr. Johnson was "a fine

lawyer" and that the court did on occasion play tennis with Mr. Johnson.

This court should also note that the appellant raised no objection to any of the alleged prejudicial comments during the course of the trial, nor were they argued as a basis for either a directed verdict of acquittal or a mistrial. A similar situation was presented in the *Wade* case. In that case the Ohio Supreme Court held that:

"* * * it is apparent from the record that appellant failed to object to the content of the judicial statements as being prejudicial to appellant's rights. The failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, * * *." *Wade, supra,* at 188.

We, therefore, overrule appellant's fourth assignment of error.

Appellant's fifth assignment of error states:

"The court below erred in preventing defense counsel from generally discussing proof beyond a reasonable doubt, burden of proof, and presumption of innocence in his opening argument and in the voir dire of the jury."

An examination of the trial transcript in full reveals that the defense counsel was not limited in such ways but was permitted to ask general questions or make general comment on the law. Limitations imposed on defense counsel, if any, were well within the discretion of the trial court.

The scope and extent of the examination of prospective jurors is within the discretion of the trial judge. Limitations on the scope and extent of examination are not grounds for reversal unless there is a clear abuse of such discretion.

In the present case the court properly limited the defense counsel's comments on burden of proof and reasonable doubt during his voir dire examination. The record reveals that defense counsel during voir dire examination began to make a statement concerning the burden of proof and started to define the burden of proof.

When the prosecutor objected the court sustained the objection and indicated to the jury it was his function to define the law. When defense counsel indicated to the court that he only intended to ask the jurors if they had any problems following the law the court responded that he could do so but without debating the meaning of the burden of proof. This limitation was soundly within the discretion of the trial court whose function it is to define the law. Counsel may properly ask whether the juror will or will not follow the court's instruction on the law or will or will not find the defendant not guilty if a reasonable doubt exists. In the present case defense counsel during his examination of the original twelve jurors did not ask such a question of any of the jurors. However, during examination of all substitute jurors and the alternate juror he did inquire of the jurors about the burden of proof and requested that they follow the court's instruction. This was done without objection from the state or limitation by the court.

We, therefore, overrule appellant's fifth assignment of error.

Appellant's sixth assignment of error states:

"The court below erred in its charge to the jury which had reported that they were irretrieavably [*sic*] deadlocked and that further deliberations would present no possibility of reaching a verdict."

The appellant maintains that the trial court erred when it instructed the jury to return to its deliberations after being advised by the foreman that they were not able to reach a verdict.

A review of the record indicates that the jury received the case at 11:10 a.m. on November 25, 1980. After being excused for lunch between 12:00 noon and 1:00 p.m., the jury resumed its deliberations. The jury returned to the courtroom at 1:39 p.m. with a question, which was answered by the court, and the jury resumed its deliberations at 1:43 p.m. At 2:42 p.m., the jury was returned to the

courtroom and the following exchange took place:

"THE COURT: First, a word of caution. After you have commenced your deliberation, it is important that the Court choose its words carefully, and that you refrain from any remarks that may affect the rights of either party or which may disclose your opinion as a member of the Jury.

"This is a difficult assignment for you. The process of discussion and deliberation in the jury room is necessarily slow and requires consideration and patience.

"The secrecy which surround your efforts prevents others, including the Court, from knowing when your efforts will result in a verdict.

"It is customary for the Court to inquire if there is a possibility of reaching an agreement within a reasonable time. The Court will, therefore, submit this question to the foreman with the understanding that the answer be either 'yes' or 'no.' Do not disclose any other information or indicate the status of your deliberation.

"Mr. Schaffer, is there a possibility that after an additional period of time, either today or tomorrow, that you may reach an agreement?

"MR. SCHAFFER: No, Your Honor.

"THE COURT: Well, since the trial of this case means a great deal to the parties and has been at some expense, the Court urges you to make every reasonable effort to agree upon a verdict. It is your duty to make every reasonable effort to decide this case if you can conscientiously do so.

"It is conceivable that after a reasonable length of time honest differences of opinion on the evidence may prevent an agreement upon a verdict. When that condition exists, you may consider whether further deliberations will serve a useful purpose.

"If you decide that you cannot agree and that further deliberations will not serve a useful purpose, you may ask to be returned to the Courtroom and report the fact to the Court.

"So, I'll ask you to go back and continue your deliberations until four o'clock. And then if you can't, if you'll turn the light on, I'll have you back in then.

"Is there any real objection to that?

"MR. SCHAFFER: No."

The jury returned to its deliberations at 2:44 p.m. and returned a verdict of guilty at 4:25 p.m. after exactly four hours and nine minutes of deliberation. The record indicates that the trial court's instruction to the jury was both reasonable and proper under Ohio law. Futhermore, the period of deliberation by the jury was not unreasonable when one considers that this was the trial of a felony case.

We, therefore, overrule appellant's sixth assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

LYNCH, P.J., and O'NEILL, J., concur.