**Zoltan TAKACS, Petitioner-Appellant,**

v.

**Ted ENGLE, Respondent-Appellee.**

No. 84–3593.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1985.
Decided July 23, 1985.

Paul Mancino, Jr. (argued), Cleveland, Ohio, for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Anthony J. Celebrezze, Cordelia A. Glenn (argued), Columbus, Ohio, for respondent-appellee.

Before MERRITT and CONTIE, Circuit Judges, and EDWARDS, Senior Circuit Judge.

CONTIE, Circuit Judge.

Zoltan Takacs appeals the district court's denial of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. Takacs is attacking state convictions of aggravated burglary, aggravated robbery and felonious assault. These convictions are predicated on a theft from a jewelry store owned by one Temesi. According to Temesi's testimony, Takacs and two other men entered the store and committed the robbery. Larry Hudak pleaded guilty to participating in the crime and testified for the government. According to Hudak, Takacs planned the robbery because Temesi owed him money. Takacs did not dispute at trial that he was a participant in the event, but claimed that he did not know of the intended robbery before entering the store and

that after the robbery began he went along with it out of fear for his life.

## I.

Takacs first attacks his convictions by arguing that he was denied counsel at his preliminary hearing. It is undisputed that Takacs was unrepresented by counsel at the preliminary hearing, but the state courts found this error to be harmless and the district court reached the same conclusion. Takacs argues that a complete denial of counsel at any one criminal proceeding, as opposed to mere ineffective assistance of counsel, can never be considered harmless error. He relies on language from Supreme Court cases which is best characterized as dicta. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (in deciding ineffective assistance of counsel case, Court stated that "denial of the assistance of counsel altogether is legally presumed to result in prejudice"); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984) (in deciding ineffective assistance of counsel case, Court stated that there will be a "constitutional error without any showing of prejudice when counsel was ... totally absent ... during a critical stage of the proceeding").

■ The Supreme Court first recognized that the right to counsel extends to a preliminary hearing in *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Despite the total absence of representation during the preliminary hearing in *Coleman,* the Court remanded for a determination of whether the denial of counsel was harmless error. *See id.* at 10–11, 90

S.Ct. at 2003–2004.[1] The tension between *Coleman's* holding and the dicta from other Supreme Court cases was previously addressed by this court in *McKeldin v. Rose,* 631 F.2d 458 (6th Cir.1980) (per curiam), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1488, 67 L.Ed.2d 619 (1981). In that case the district court had held "that denial of assistance of counsel at a preliminary hearing may never be treated as harmless error." *See id.* at 460. The district court relied on certain broad language from *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). We reversed the district court, holding that the broad language of *Holloway* did not portend "a departure ... from the procedure described in *Coleman"* and that a harmless error analysis continues to be appropriate. *See* 631 F.2d at 460. Takacs' argument is essentially identical to that rejected in *McKeldin.* The only difference is that Takacs relies on dicta from *Strickland* and *Cronic* rather than language from *Holloway.*[2] We adhere to *McKeldin* and hold that *Coleman's* harmless error analysis remains good law. After reviewing the record, we agree with the district court, for the reasons stated by the magistrate and adopted by the district court, that Takacs suffered no prejudice by virtue of the denial of counsel at the preliminary hearing.[3]

## II.

■ Takacs next presents an argument relating to his trial counsel's previous representation of Hudak, an accomplice who eventually testified for the government. Although the cases cited by Takacs concern possible ineffective assistance of counsel

---

**1.** Although other portions of Justice Brennan's opinion represent only a plurality of the Court, its holding on harmless error drew four concurrences. *See id.* at 10 n. 4, 90 S.Ct. at 2003 n. 4. *See also id.* at 20–21, 90 S.Ct. at 2009–2010 n. 4 (Harlan, J., concurring in part and dissenting in part).

**2.** The precise language of *Holloway* supports our conclusion. The Court held that automatic reversal is the rule only where the denial of counsel occurred "throughout the prosecution" or at a single, discrete "critical stage" of a prosecution for a "capital offense." *Holloway,* 435

U.S. at 489, 98 S.Ct. at 1181. Takacs' claim falls into neither of these categories.

**3.** Takacs also argues that the state courts misallocated the burden of proof on the question of harmless error. Whether or not the state courts did so is irrelevant. This court is in a position to judge the question of harmless error, and if the denial of counsel was harmless error, considered under the proper standards, then the state courts' misallocation in no way affects Takacs' rights.

due to a conflict of interest, he also implies that Hudak's testimony should not have been admitted due to the prior representation. Insofar as Takacs argues that Hudak's testimony implicates his sixth amendment right to counsel, he misconceives his remedy. If Hudak's testimony adversely affected the performance of Takacs' counsel, then his remedy is to complain of his counsel's effectiveness, not of the admission of Hudak's otherwise unobjectionable testimony.

■ Turning to the sixth amendment question, a defendant's counsel's prior representation of a government witness can sometimes lead to ineffective assistance. The principal problem in such cases is that a counsel's cross-examination of his prior client may be inhibited by his knowledge of privileged information. *See, e.g., Ross v. Heyne,* 638 F.2d 979, 984–85 (7th Cir.1980); *United States v. Martinez,* 630 F.2d 361, 363 (5th Cir.1980), *cert. denied,* 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). In this case, however, it is undisputed that Hudak waived his privilege as to any confidential communications. Given this waiver, Takacs' counsel had no ethical or legal reason to fail to cross-examine Hudak vigorously. Accordingly, the prior representation did not operate to deny Takacs his right to effective assistance of counsel.

### III.

Takacs' third claim is that the state trial court unconstitutionally limited the scope of his cross-examination of adverse witnesses. Limitations on cross-examination undoubtedly implicate a defendant's sixth amendment rights. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This circuit has articulated an abuse of discretion standard in reviewing habeas claims of this nature. *See Stevens v. Bordenkircher,* 746 F.2d 342, 346–47 (6th Cir.1984). In considering abuse of discretion, this court looks to "whether the jury was otherwise in possession of sufficient information concerning formative events to make a discriminating appraisal"

of the veracity of the testimony. *Id.* at 347.

■ After examining the several instances of asserted improper limitation presented by Takacs, we find no sixth amendment violation. Some of the excluded cross-examination was simply immaterial (such as questions going to whether Temesi had once engaged in a fencing operation and the circumstances of Hudak's guilty plea). Other portions of the cross-examination called for excludable hearsay (the questions asking what Takacs had told Hudak about Temesi's debt to him). Finally, some of the cross-examination arguably was irrelevant and definitely called for speculation (the questions about the motives of the FBI in interviewing Hudak). Moreover, although Takacs vaguely asserts that this cross-examination concerned "vital areas" of the case, he has failed to identify precisely what he hoped to elicit from these questions and what bearing it would have had on the case.

### IV.

■ Takacs argues that the state unconstitutionally required him to prove duress as an affirmative defense. There are two prongs to this argument. First, the state must bear the burden of proving beyond a reasonable doubt every element of the offense charged. *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). If duress is, as a matter of state law, not an affirmative defense but instead the absence of duress is an element of the crime, then it was unconstitutional to place the burden of proof on Takacs. Second, a defense may be denominated an affirmative defense under state law, but nonetheless, because of its nature, negate an element of the offense. Requiring a defendant to prove the existence of a defense which negates an element of the offense apparently violates due process. *See Engle v. Isaac,* 456 U.S. 107, 121–22, 102 S.Ct. 1558, 1568–69, 71 L.Ed.2d 783 (1982) (such an argument presents a "colorable" or "plausible" claim); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281

(1977) (providing the converse rule, that a defendant may be required to prove an affirmative defense which goes only to excuse or mitigation and does not negate an element of the offense); *Thomas v. Arn*, 704 F.2d 865, 874 (6th Cir.1983) (if a defense "does not negate any element of the crime charged, the State may properly place the burden of proof as to the defense on the defendant").

### A.

The first question is determined by examining how Ohio characterizes the defense of duress. An affirmative defense is defined in Ohio as one which is "expressly designated as affirmative" or one which involves "an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." Ohio Rev.Code § 2901.05(C). Ohio courts have held that entrapment, insanity, self-defense and the use of reasonable force to affect a citizen's arrest are all affirmative defenses under § 2901.05. *See State v. Doran*, 5 Ohio St.3d 187, 193 & n. 5, 449 N.E.2d 1295 (1983). They have also held that a lack of ability to pay is an affirmative defense to the charge of failure to pay child support. *See State v. Wright*, 4 Ohio App.3d 291, 294, 448 N.E.2d 499 (1982).

 There appear to be no Ohio authorities authoritatively characterizing the nature of the defense of duress. In *State v. Cross*, 58 Ohio St.2d 482, 391 N.E.2d 319 (1979), the court, in deciding another question, did characterize duress as an affirmative defense. *Id.* at 485 n. 5, 391 N.E.2d 319. Although not a holding, the characterization in *Cross* is fully consistent with other aspects of Ohio law. Duress is similar to other defenses which have been characterized as affirmative. Both duress and, for example, entrapment involve conduct that, but for the presence of the defense, would be criminal. Duress is thus in the nature of an "excuse or justification." This view is further supported by the fact that Ohio courts have noted with approval the common law rule that duress is no

defense to the taking of an innocent life. *See State v. Metcalf*, 60 Ohio App.2d 212, 215, 396 N.E.2d 786 (1977). If Ohio is willing to punish some crimes even where duress is shown, then it is hard to see how the absence of duress can be an element of criminality. We conclude, therefore, that Ohio treats duress as an affirmative defense which must be proven by the defendant. Since the absence of duress is not an element of the crime, the state is not required to bear the burden of proof on this issue under cases such as *Mullaney* and *Patterson*.

### B.

Some of the same considerations are relevant to determining the second question, whether the presence of duress negates an element of the crime. Takacs argues that duress negates a *mens rea* element necessary to establishing any criminal liability. Ohio requires a "voluntary act" as an element of every crime. *See* Ohio Rev.Code § 2901.21(A)(1). A voluntary act is defined in the negative:

> Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts.

Ohio Rev.Code § 2901.21(C)(2).

 We do not believe that proof of duress negates the voluntary act requirement. The *Metcalf* holding—that duress is not a valid defense to the most serious crimes—reveals that duress has no relation to the voluntary act requirement: if duress negates the voluntary act requirement, it would do so for all crimes, including the taking of an innocent life. The voluntary act requirement is a narrow one, removing only truly uncontrollable physical acts from criminal liability, and is easily satisfied even when a person acts under duress. This conclusion is supported by two recent Sixth Circuit decisions. In *Thomas v. Arn*, we held that proof of self-defense does not negate the voluntary act requirement. *See* 704 F.2d at 876. Even more significant is *Howze v. Marshall*, 716 F.2d 396 (6th Cir.

1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Ohio has an "irresistible impulse" component in its insanity defense. We held in *Howze* that proof of an irresistible impulse does not negate the voluntary act requirement. *Id.* at 400. If a person can act under the force of an "irresistible impulse" and nonetheless engage in a "voluntary act," then a defendant's actions that are taken under duress are also "voluntary acts."

### V.

Takacs also challenges the trial court's instructions on duress. Takacs had requested an instruction which included both duress and "coercion ... brought upon by moral force." The trial court did not give this instruction and instead instructed only on duress, focusing on physical force. It is not readily apparent how the instruction, even if erroneous under state law, becomes a constitutional error. Assuming some constitutional right is at stake, no substantive error occurred. Under Ohio law the principal distinction between duress and coercion is between, on the one hand, physical force and, on the other, moral force. *State v. Woods,* 48 Ohio St.2d 127, 136, 357 N.E.2d 1059 (1976), *vacated,* 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153 (1978). In this case, Takacs' theory was that he acted under compulsion brought upon by physical force—*i.e.* he was acting under duress. No evidence related to moral force and thus no purpose existed in instructing on coercion.

### VI.

Takacs next raises two issues concerning accomplice testimony. He asserts that a conviction based solely on uncorroborated accomplice testimony is not supported by constitutionally sufficient evidence. Second, he argues that the jury should have been instructed on this principal.

### A.

The Constitution says nothing about accomplice testimony. Due process does require, however, that the evidence adduced at trial, when viewed in the light most favorable to the government, be sufficient to persuade a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not believe that *Jackson* incorporates any particular state rules about the weight to be given particular kinds of evidence. It is not irrational to rely on uncorroborated accomplice testimony, and a rational trier of fact could therefore have found Takacs guilty beyond a reasonable doubt based solely on Hudak's testimony.[4]

### B.

Given this conclusion, Takacs' claim that the jury instructions should have limited the weight to be given to Hudak's testimony must also fail. If uncorroborated accomplice testimony is sufficient to support a conviction under the Constitution, there can be no constitutional right to instruct the jury that it must find corroboration for an accomplice's testimony.

### VII.

Finally, Takacs presents a speedy trial clause argument. Takacs was arrested on February 25, 1980 and his trial began on September 11, 1980. Much of Takacs' argument asserts that this delay violated an Ohio statutory speedy trial provision. Whatever the merits of this argument, it does little to advance a claim that Takacs was denied a *constitutional* right to a speedy trial.

Nor does it appear that Takacs was denied his constitutional right to a speedy trial under the sixth amendment. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that four factors are to be considered in determining speedy trial questions under

---

**4.** We also note, as did the magistrate, that Temesi's testimony provided some corroboration for Hudak's testimony.

the sixth amendment: the length of the delay, the reason for the delay, the assertion of the right by the defendant and any prejudice accruing to the defendant. *Id.* at 530, 92 S.Ct. at 2191. The length of the delay acts as a "triggering mechanism." *Cain v. Smith,* 686 F.2d 374, 381 (6th Cir. 1982). That is, "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191; *Cain,* 686 F.2d at 381. In *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (per curiam), the Court held that under *Barker* a defendant need not in every case establish prejudice to his ability to defend on the charges at trial to establish a speedy trial clause violation. Rather, each of the factors must be considered. *Id.* at 26, 94 S.Ct. at 189.

 In this case, there was a delay of approximately six and one-half months. This is probably a sufficient length of time to trigger an inquiry into the other factors. *See Cain,* 686 F.2d at 381. A consideration of the other factors, however, leads to the conclusion that Takacs' speedy trial rights were not violated.

First, although the length of the delay is sufficient to necessitate further inquiry, six and one-half months is not a clearly excessive delay. *Compare Cain,* 686 F.2d at 382 (eleven and one-half month delay is excessive and is a factor to be counted against the government). Second, it appears from the record that at least part of the delay is attributable to the defendant's return to Texas to serve a sentence there. Although the record is somewhat unclear on the precise circumstances of the return to Texas, the state court found that Takacs was returned to Texas to serve a prison term. *See* App. at 44. This is a finding of fact and is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Moreover, nothing in the record shows that this finding is erroneous. At least a substantial portion of the delay is, therefore, not attributable to the government. We thus conclude that the second factor under *Barker,* the reason for the delay, weighs in favor of the government. The third factor,

the assertion of the right by the defendant, weighs heavily against Takacs. Takacs did not assert his speedy trial right until August 29, 1980, shortly before the commencement of the trial on September 11, 1980. *See* App. at 78. In *Martin v. Rose,* 744 F.2d 1245 (6th Cir.1984), this court found no speedy trial clause violation where there was a delay of almost two years. Among the factors influencing this court's decision was the defendant's failure to "demand a speedy trial until five days before his trial." *Id.* at 1252. Thus, the failure of Takacs to assert earlier his right to a speedy trial weighs heavily against him. Finally, although *Moore* indicates that prejudice to the defendant is not talismanic, prejudice nonetheless remains one of the four factors to be considered under *Barker.* In this case, Takacs has made absolutely no showing of prejudice to his ability to defend at trial or to any other interests he may have.

Upon considering the four factors enunciated by the Supreme Court in *Barker,* we conclude that Takacs' speedy trial rights were not violated.

### VIII.

For the reasons stated above, the judgment of the district court is AFFIRMED.