File Name: 08a0464n.06
Filed: August 4, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 06-3585, 06-3652

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

WALTER J. SUTTLES,

      Petitioner-Appellant, Cross-Appellee,

v.

JULIUS WILSON, Warden,

      Respondent-Appellee, Cross-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____ /

Before:      MARTIN and GRIFFIN, Circuit Judges, and GIBSON, Circuit Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. Petitioner Walter J. Suttles filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following his convictions for murder, possession of a weapon while under disability, and tampering with evidence, the state court sentenced Suttles to twenty-five years to life. The district court granted Suttles' petition in part and denied it in part, and both the state and Suttles appeal the decision to this Court. Because we find that Suttles' counsel was conflicted and his representation was adversely affected as a result, we REVERSE that portion of the district court's decision denying habeas corpus, GRANT the writ of habeas corpus, and REMAND to the district court to instruct the state court to hold a new trial within

_____

    [*] The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

180 days. Our grant of this writ on the conflict of interest issue renders the double jeopardy issue (case number 06-3652) moot; we will thus not discuss it here.

I

On the night of January 24, 1998, Suttles was at the Zulu Club in Akron, Ohio celebrating his thirty-seventh birthday with friends and family. At some point in the evening the victim, Marcus Cunningham, became belligerent and refused to leave the club when requested by a bouncer. At this point Suttles, who was an owner of the bar, told Cunningham that he would have to leave and tried to escort him to the door. Cunningham threw a can of beer at Suttles, which missed and hit Suttles' sister in the head. Cunningham then left the bar, and was followed by Zulu club bouncers who may have beaten him. Cunningham went to a car and grabbed a baseball bat, while Suttles went to the bar and grabbed a rifle. When Suttles returned to the front door, he saw Cunningham with the baseball bat walking back toward the club, hitting people with the bat as he went. As Cunningham approached the front door with the bat, Suttles shot and killed him. Suttles then handed the gun to another person and went home, where the police found him approximately three hours later. The police arrested Suttles and charged him with the shooting.

Nine days before the case went to trial, the trial court appointed Annette Powers to be Suttles' counsel. At that time, the court recognized that a potential conflict existed for Powers due to her simultaneous representation of one of the State's chief witnesses, George Thomas, in an unrelated felony case. The court attempted to resolve the conflict by ordering another attorney, Renee Green, to cross-examine Thomas at trial. The record does not reveal whether the trial court knew that Green

had also represented Thomas at a plea hearing.[1] Powers, however, continued to represent Thomas as Thomas negotiated a plea with the State.

During Suttles' first trial, Green cross-examined Thomas, but never asked him if he expected to receive any consideration from the State in exchange for his testimony. The first trial resulted in a hung jury and a new date was set for the second trial. Sometime between the two trials, Powers helped to secure a plea deal for Thomas. Then, days before Suttles' second trial, the State curiously allowed Thomas to withdraw his plea, and Powers withdrew as Thomas's counsel. Thomas's plea was eventually renegotiated after his testimony in Suttles' case, resulting in a lesser sentence than he had under his original (withdrawn) plea agreement.

Prior to Suttles' second trial, the State filed a motion in limine asking the court to prohibit both Powers and Green from questioning Thomas about his felony convictions on cross-examination. With this motion, the State argued that a conflict of interest existed because Suttles' attorneys represented both him and Thomas. The trial court overruled the State's motion and permitted the cross-examination. Again, Green never questioned Thomas about his convictions, and the then-withdrawn plea agreement was never brought up.

Suttles' second jury returned a guilty verdict on: (1) aggravated murder, with one firearm specification; (2) possession of a weapon while under a disability, with two firearm specifications; and (3) tampering with the evidence, with two firearm specifications.

---

[1] Arguably creating an additional conflict of interest involving Green's representation of Suttles.

Suttles filed a timely appeal to his convictions to the Ohio Court of Appeals for the Ninth District and later to the Ohio Supreme Court, arguing prosecutorial misconduct in closing statements and sufficiency of the evidence. The Ohio Supreme Court denied leave to appeal. Suttles filed a motion to reopen his case pursuant to Ohio Appellate Rule 26(B) (a "*Murnahan* motion") in the Ninth District Court of Appeals, alleging ineffective assistance of counsel. The Court of Appeals denied the motion, and the Ohio Supreme Court dismissed his appeal.

On November 12, 2002, Suttles filed a petition for a writ of habeas corpus, asserting double jeopardy violations and ineffective assistance of counsel.[2] A magistrate found no violation of Suttles' Sixth Amendment right to effective assistance of counsel. On review, the federal district court applied the standard from *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), and found that Suttles had not been denied effective assistance of appellate counsel.[3] On appeal to this Court, Suttles appeals the partial denial of his petition relating to ineffective assistance of counsel.

II

This Court reviews a district court's disposition of a habeas corpus petition *de novo*, and its findings of fact for clear error. *Rickman v. Bell*, 131 F.3d 1150, 1153 (6th Cir. 1997). The standard of review on habeas corpus is also governed by the Antiterrorism and Effective Death Penalty Act of 1996, which allows this Court to grant habeas if the state court's adjudication of the claim (1) resulted in a decision that was contrary to clearly established federal law, as determined by the

---

[2] Suttles withdrew two other grounds: prosecutorial misconduct and sufficiency of the evidence.

[3] The court granted the writ with regard to the double jeopardy claim, but only with regard to Suttles' sentencing.

Supreme Court of the United States; (2) involved an unreasonable application of clearly established

federal law, or (3) was based on an unreasonable determination of the facts in light of the evidence

presented in the state court. *Williams v. Taylor*, 529 U.S. 362, 403 (2000). In this case, the Ohio

Supreme Court gave no explanation for its denial of Suttles' claims. As such, the federal courts "are

obligated to conduct an independent review of the record and applicable law" to see whether the state

court's decision was contrary to applicable law or an unreasonable application of the facts. *Harris*

*v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

III

Suttles argues that his appellate counsel was ineffective for failing to raise trial counsel's

conflict of interest during his trial. In *Strickland*, the United States Supreme Court articulated a two-

pronged test that a petitioner must satisfy in order to prevail on an ineffective assistance claim. 466

U.S. at 688. A petitioner must show: (1) the performance of counsel fell "below the objective

standard of reasonableness," and (2) prejudice, i.e. that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

688, 694.

The district court concluded that the first part of the test was met, and we agree. As this

Court has noted in the past, "a defendant's counsel's prior representation of a government witness

can sometimes lead to ineffective assistance. The principal problem in such cases is that a counsel's

cross-examination of his prior client may be inhibited by his knowledge of privileged information."

*Takacs v. Engle*, 768 F.2d 122, 125 (6th Cir. 1985). This is exactly the case here: both of Suttles'

attorneys had represented Thomas during past plea negotiations, and indeed represented both Suttles

and Thomas throughout Suttles' first trial.  This placed them in the difficult position of either using

their knowledge of Thomas's plea negotiations against him on cross-examination, or sacrificing their

representation of Suttles by failing to draw out Thomas's bias.  This is exactly the kind of conflict

that our law seeks to avoid.  As such, we find that there was an actual conflict at the trial level,

resulting in representation that fell below the objective standard of reasonableness.  *See Strickland*,

466 U.S. at 694.

Where a conflict of interest has been established, a court is entitled to apply a presumption

of prejudice under *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  However, this presumption is not

absolute, and is strongest in cases where the defendant or his counsel objects to the conflict of

interest prior to or during trial.  *See Holloway v. Arkansas*, 435 U.S. 475, 489-92 (1978).  Where a

party has no opportunity to object to a ruling or order, however, the absence of an objection does not

thereafter prejudice that party.  FED. R. CRIM. P. 51.  Here, Powers represented to the court that

Thomas had "clearly and unequivocally waived any conflict," but nothing on the record supports this

assertion.  Joint App'x at 556.  The court's inquiry into the conflict was in chambers, when Suttles

was not present; he was never given the opportunity to object in open court.  Suttles cannot therefore

be prejudiced by his failure to object to his counsel's conflict of interest.

The trial court, moreover, had the duty to inquire into the nature of the conflict at such time

as it became aware of the potential for conflict of interest. *See Wood v. Georgia*, 450 U.S. 261,

272-74 (1981).  Failure of a trial court to conduct such an inquiry mandates a reversal if the

defendant can show the conflict adversely affected his counsel's performance.  *Mickens v. Taylor*,

535 U.S. 162, 173-74 (2002).  Nothing on the record shows that trial court asked Suttles directly

about his counsel's potential conflict of interest. Because the conflict adversely affected the performance of his counsel, Suttles should therefore have been entitled to a reversal of his conviction.

Having found both that Suttles' counsel provided ineffective assistance at the trial level and he was prejudiced thereby, we address Suttles' present claim: ineffective assistance of appellate counsel. Given the obvious conflict of interest at the trial level, we find that Suttles' appellate counsel was ineffective for failing to raise the issue of the conflict. We also find that because prejudice would have been presumed, there is more than a reasonable probability that the outcome of the appeal would have been different had appellate counsel acted reasonably. *Strickland*, 466 U.S. at 694. Therefore, because appellate counsel unreasonably failed to raise the conflict of interest issue, his performance was unconstitutionally ineffective.

IV

For the reasons articulated above, we REVERSE the judgment of the district court and REMAND with instructions to enter a conditional writ of habeas corpus, giving the State of Ohio 180 days within which to provide petitioner a new trial, or, failing that, to release him. See e.g., Ramonez v. Berghuis, 490 F.3d 482, 491 (6th Cir. 2007); Richey v. Bradshaw, 498 F.3d 344, 364 (6th Cir. 2007).