OPINION
{¶ 1} Annie C. Corrai, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which she was found guilty of tampering with evidence, in violation of R.C. 2921.12, which is a third-degree felony; and two counts of Medicaid fraud, in violation of R.C. 2913.40, one of which is a third-degree felony and the other a fourth-degree felony.
 {¶ 2} Appellant is a registered nurse and was contracted with the Ohio Department of Job and Family Services ("ODJFS") to provide nursing services as an independent provider to two Medicaid recipients, Alan Verhoff and Margaret Firestone. Verhoff was involved in a car accident that rendered him paralyzed below the waist. He was authorized by Medicaid to receive nursing services twice per day for two to three hours per visit from 1997 to 2002. Verhoff testified that appellant provided the required services for about a year after his accident while he was living with his parents. However, when he moved to independent housing in October 1997, appellant's services dropped off dramatically to where she was only visiting him about twice a week for five to fifteen minutes each visit. The relevant period at issue is for services appellant rendered to Verhoff from June 18, 2000 to December 30, 2002.
 {¶ 3} Margaret Firestone is a child with a rare metabolic disorder that affects her ability to eat food. Appellant provided nursing services to her for the relevant period from July 1, 2000 to August 31, 2002. Margaret's mother, Melissa, told investigators that there were times that appellant allowed someone else to watch her daughter instead of appellant, and she only occasionally assisted Margaret on Sundays.
 {¶ 4} In late 2002, an investigation was launched into appellant's billing for Firestone and Verhoff, after a complaint was filed by James Beverly, a friend of Verhoff's. Although appellant initially told investigators that she had provided care to Verhoff seven days per week for the relevant period, she eventually admitted that she had billed ODJFS for services to Verhoff on various occasions even though she had not provided any services to him on those occasions. Appellant claimed that she provided all of the billed services but performed them on dates other than those for which she billed. Appellant also told investigators that she never cared for Margaret on Sundays, though she billed ODJFS for such care. Appellant also gave investigators various records pursuant to a Grand Jury subpoena on January 15, 2003.
 {¶ 5} On May 20, 2003, appellant was charged with one count of tampering with evidence, two counts of Medicaid fraud, and one count of forgery. One count of Medicaid fraud related to appellant's care of Verhoff and the other count of Medicaid fraud related to appellant's care of Firestone. The tampering with evidence and forgery counts related to allegations that appellant, sometimes with the aid of Leslie Howard, appellant's halfaunt, prepared false narrative notes and nursing flow sheets for Verhoff in December 2002, in response to the Medicaid fraud investigation that appellant knew was ongoing.
 {¶ 6} A jury trial was held, at which the state and appellant called numerous witnesses, and appellant testified on her own behalf. Special Agent Steve Wozniak of the Ohio Medicaid Fraud Control Unit testified that appellant received an overpayment of $175,089 for services billed but not provided to Verhoff from June 2000 to December 2002. Wozniak arrived at that total by assuming appellant had provided three hours of actual care per week to Verhoff. Wozniak also concluded that appellant had failed to provide any care to Firestone on Sundays between July 2000 and August 2002, but appellant billed Medicaid $7,968.61 for care she claimed to have provided on those days.
 {¶ 7} The jury found appellant guilty on the tampering with evidence count and the two counts of Medicaid fraud but found her not guilty as to the forgery count. The trial court sentenced appellant to a four-year prison term on the tampering with evidence count and one of the Medicaid fraud counts, and 17 months on the other Medicaid charge, to be served concurrent with each other. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
I. The appellant was denied effective assistance of counsel thereby depriving him his [sic] right to a fair trial under the state and federal constitutions.
II. When the trial court interjects its personal opinion as to appellant's defense theories, mocks and ridicules defense counsel and refuses to allow counsel to approach the bench, all of which occurs before the jury, the appellant is denied her right to a fair trial.
III. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 8} Appellant argues in her first assignment of error that she was denied effective assistance of counsel, thereby depriving her of her right to a fair trial. To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v.Hamblin (1988), 37 Ohio St.3d 153, 155-156. We note that effective assistance of counsel does not equate with a winning defense strategy and debatable trial tactics do not necessarily constitute a violation of defense counsel's duties. State v. Clayton (1980), 62 Ohio St.2d 45, 49. Counsel is not ineffective simply because a better trial strategy may have been available. Id. Further, a defendant must demonstrate, not merely speculate, that defense counsel's trial tactics prejudiced her. See State v. Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 9} Appellant first contends that her counsel was ineffective because he did not understand that relevant documents could be subpoenaed and examined prior to trial. Appellant points out several instances she claims demonstrates her counsel's lack of understanding on this point: (1) before the trial began, her attorney questioned the court about records regarding certain blood draws completed by appellant that were subpoenaed for trial but not received or reviewed by counsel; (2) the trial court asked counsel whether an ODJFS Medicaid audit was "Brady
material," and counsel responded that he did not know what "Brady
material" meant; and (3) prior to placing a witness, Susan Willoughby, on the stand to testify regarding records demonstrating appellant had picked up supplies for Verhoff on certain days, counsel told the court that he had not reviewed the records, and they had just been delivered that morning.
 {¶ 10} With regard to the first instance cited above, it is apparent that trial counsel knew he was able to subpoena and examine the documents related to the blood draws. Counsel later explained that he waited to file the subpoena related to these documents until the trial court ruled on appellant's motion to change venue the week before trial, because he did not know where the case was going to be held until that time. Although trial counsel could have subpoenaed the documents earlier, he was clearly aware he was permitted to subpoena documents. That trial counsel was aware he could subpoena witnesses and documents prior to trial was also evident in that he filed myriad subpoenas in the month prior to trial and subpoenaed at least one witness for trial who produced several requested documents.
 {¶ 11} As to the second instance above, regarding the ODJFS Medicaid audit and "Brady material," we find appellant's argument unpersuasive. "Brady material" refers to the case of Brady v. Maryland (1963),373 U.S. 83, 87, 83 S.Ct. 1194. In Brady, the United States Supreme Court declared that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the prosecution notify the defense of any evidence that would tend to exculpate him. In the present case, although trial counsel was apparently not aware of the terminology "Brady material," we fail to see how this prejudiced appellant. The prosecution consistently maintained that it did not know to what Medicaid audit defense counsel was referring, and, as far as the prosecution knew, it was not in possession of such material. Thus, we fail to see any prejudicial consequence of defense counsel's failure to understand the meaning of "Brady material." Whether counsel knew he was entitled to such material was of no consequence because the prosecution was not in possession of the material, and the state was already required to provide all exculpatory material pursuant to the Crim.R. 16 discovery request by appellant's prior counsel. Therefore, appellant can show no prejudicial effect, even if her counsel's actions could be said to have fallen below an objective standard of reasonableness.
 {¶ 12} With regard to the third instance cited above, in which defense counsel admitted to the court that he had never examined the records detailing appellant's having picked up supplies for Verhoff, we again fail to find any prejudice. Defense counsel, the prosecution, and the court examined the documents together to determine what information they contained and then questioned Willoughby, the office manager for the company that kept the records, to further determine what information the documents contained. Appellant's counsel was then permitted to question Willoughby on direct examination as to the documents. Further, three of the documents that were deemed relevant by the trial court were eventually admitted into evidence. Given these circumstances, we fail to see, and appellant fails to point out, how she may have been prejudiced by her counsel's failure to review the records prior to examining Willoughby.
 {¶ 13} Appellant also argues that her trial counsel was ineffective in failing to adequately assert a defense on her behalf. Specifically, she claims that her theory of defense was that the state's witnesses were biased and seeking revenge against her because many of them, including Verhoff, were friends with her ex-husband, and her exhusband had been providing drugs to them before appellant divorced him. Appellant asserts that her counsel failed to ask any of the state's witnesses about this allegation. Appellant maintains that the reason her trial counsel did not ask the witnesses about such bias is that he mistakenly believed he had to first establish bias by presenting evidence through his own witnesses before questioning the state's witnesses on their bias.
 {¶ 14} However, as the state points out, the only defense outlined in appellant's opening statement was that appellant had actually provided the services for which she billed Medicaid. Appellant's counsel did not reveal the defense theory regarding drugs and revenge in his opening statement. Therefore, we have no way of knowing whether this theory was in place from the beginning or was formulated sometime during the course of the trial. Appellant's trial counsel was clear that their theory was that appellant, in fact, provided all the services she claimed, and he put on evidence and examined witnesses toward proving that theory.
 {¶ 15} Notwithstanding, appellant's trial counsel proffered to the trial court that the testimony of Beverly and Verhoff was false based upon their alleged vow of revenge. Even if the testimony of both of these witnesses was false, the state presented numerous other witnesses who testified as to appellant's actions and inactions. There was also evidence that appellant admitted in a statement that there were periods for which she billed but did not provide the services. Thus, even assuming, arguendo, that the testimony of Beverly and Verhoff was false, appellant fails to explain any prejudicial effect in light of the other substantial testimony and evidence presented.
 {¶ 16} Appellant next asserts that her trial counsel was ineffective by failing to object to Wozniak's testimony relating to the calculation of the amount of loss. Appellant contends that Wozniak was not qualified as an expert in calculating theft amounts. As we have found under appellant's third assignment of error that Wozniak was not required to be qualified as an expert in order to give his testimony on this subject, appellant's trial counsel was not ineffective in failing to object to Wozniak's testimony in this regard. Therefore, this argument is without merit. For the foregoing reasons, appellant's first assignment of error is overruled.
 {¶ 17} Appellant argues in her second assignment of error that the trial court erred by interjecting its personal opinion as to defense theories, mocking and ridiculing defense counsel, and refusing to allow counsel to approach the bench, all of which occurred before the jury. Appellant contends that the trial court was frustrated with her counsel from the beginning of trial, which lead to the trial court's inappropriate behavior.
 {¶ 18} Judicial bias is "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." State ex rel. Pratt v.Weygandt (1956), 164 Ohio St. 463, paragraph four of the syllabus. Trial judges are "presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." Okocha v. Fehrenbacher (1995),101 Ohio App.3d 309, 322, citing State v. Wagner (1992),80 Ohio App.3d 88, 93. In determining whether the trial court's comments were prejudicial: (1) the burden of proof is placed upon the defendant to demonstrate prejudice; (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for; (3) the remarks are to be considered in light of the circumstances under which they are made; (4) consideration is to be given to their possible effect upon the jury; and (5) their possible impairment of the effectiveness of counsel. State v.Wade (1978), 53 Ohio St.2d 182, 188, vacated and remanded on other grounds, 438 U.S. 911, 98 S.Ct. 3138. In addition, the defendant must object to the comments, in order to give the judge an opportunity to give curative instructions. Id. The failure to object to the trial court's remarks and actions waives all but plain error. State v. Wright (1982),4 Ohio App.3d 291, 296.
 {¶ 19} Appellant cites numerous examples of the trial court's conduct, which she believes was improper. We note that defense counsel failed to formally object to many of the comments or remarks by the trial court, and, thus, any argument related to such may be deemed waived. Id. Notwithstanding, appellant first points out seven occurrences during the course of the trial in which the trial court commented that defense counsel's questions were irrelevant. However, in five of these occurrences, the trial court was directly ruling on an objection by the state as to relevance. Also, in one of those five, the trial court actually permitted appellant's counsel to continue questioning on the subject as long as it remained relevant to the case, and, in another one of those five occurrences, defense counsel agreed that the question was not relevant. A trial court is under the duty to exclude evidence that is not relevant and sustain objections as to such evidence. See Evid.R. 402; Nielsen v. Meeker (1996), 112 Ohio App.3d 448 (trial court is vested with the authority to rule on relevance of evidence). Certainly, in making such a ruling, the trial court is permitted to indicate in open court its reason for sustaining the objection. Further, trial judges often make comments in ruling on objections in an attempt to direct counsel to areas of inquiry that are relevant and appropriate. Weiner v.Kwiat, Montgomery App. No. 19289, 2003-Ohio-3409, at ¶ 94. Evid.R. 611(A) recognizes the trial court's authority to exercise control over the courtroom, and R.C. 2945.03 likewise mandates that a judge control all proceedings during a criminal trial and limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue. In the present case, we find the remarks made by the trial court during its rulings in these five instances were reasonable exercises of control over the proceedings and reasonable attempts to limit the testimony to relevant issues.
 {¶ 20} We also fail to find any error by the trial court related to the remaining two occurrences cited by appellant. In one of the two remaining occurrences, the trial court merely asked counsel where he was going with his line of questioning, and defense counsel conceded that "[m]aybe we're heading nowhere" and then ended his examination of the witness. In the last occurrence, the trial court did, sua sponte, raise a question to defense counsel as to the relevancy of his line of questioning. However, in that instance, defense counsel agreed, "[n]o, that is not relevant. I'm sorry." Therefore, given that appellant's counsel conceded in these two instances that his questioning was astray or irrelevant, we cannot find the trial court erred in its remarks. Accordingly, we do not find the trial court's pronouncements as to relevancy in any of these seven instances were improper.
 {¶ 21} Appellant also raises an issue with regard to the trial court's comment that her counsel's line of questioning was "irrelevant gibberish." However, this comment was made outside of the presence of the jury. As the jury never heard this comment, we fail to see how appellant was prejudiced or how the comment may have affected the jury's verdict. Therefore, the argument is without merit.
 {¶ 22} Next, appellant argues that the court called the integrity of defense counsel into question during the examination of a state's witness regarding an e-mail the witness had authored. While the parties and the trial court were discussing an objection by the state as to the testimony of the witness, the trial court stated to defense counsel, "[w]hat are you doing to the e-mail? Are you rewriting it for her?" In this same discussion, the trial court then made the following statement:
THE COURT: Will you be quiet. We obviously have a disagreement. You keep shouting who did what. We're not going to sit here and air our dirty laundry in front of the jury. They don't care. They just want to know what this case is about.
 {¶ 23} As to the trial court's first comment, it appears from later in the record that defense counsel was, in fact, marking the e-mail document. In his subsequent questioning of the witness, defense counsel told the witness that he had altered the document by writing something on it and then asked the witness to read the line he underlined. We cannot say that the trial court's inquiry after seeing a potential exhibit being altered is improper.
 {¶ 24} As for the court's second comment, it is apparent that the trial court was somewhat frustrated with the performance of appellant's counsel. In fact, the trial judge admitted at one point that he was typically a "pillar" of patience, but defense counsel was testing his fortitude. Although such remarks from the bench should be kept to a minimum, from our review of the record, we recognize the source of the court's frustration. At times, defense counsel was unorganized, unprepared, confused, and argumentative and obstinate with the court. Nevertheless, appellant fails to demonstrate any prejudice, explain the possible effect upon the jury, or claim any impairment of the effectiveness of counsel as a result of the particular remark cited above. Under the circumstances, viewing the record as a whole, we fail to find the court's comments prejudiced appellant or hindered the presentation of her case.
 {¶ 25} Appellant also contends the trial court erred by refusing to permit her trial counsel to approach the bench and proffer evidence at one point during the trial. We disagree. The trial court stated that defense counsel would be permitted to make a record during the next break, and, indeed, counsel did later proffer evidence on the record. Although appellant claims that her counsel's inability to make a proffer before the jury affected his credibility, we fail to see how this would be true. Appellant's counsel originally requested to make the proffer at the bench with the court reporter and out of the hearing of the jury. Therefore, we do not see how appellant was affected by the trial court's later permission to make a record with the court reporter during a break outside the presence of the jury. We see the trial court's actions as a reasonable exercise of control over the proceedings. See R.C. 2945.03. For the foregoing reasons, appellant's second assignment of error is overruled.
 {¶ 26} Appellant argues in his third assignment of error that the jury's verdict was based upon insufficient evidence and against the manifest weight of evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 27} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v.Getsy (1998), 84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 28} Under this assignment of error, appellant's only argument is that the evidence did not support a finding that the value of the Medicaid services for which she fraudulently billed was more than $5,000. R.C. 2913.40(E) provides that, if the value of property, services, or funds obtained in committing Medicaid fraud is between $500 and $4,999.99, the violation is a fifth-degree felony; if the value is between $5,000 and $99,999.99, the violation is a fourth-degree felony; and if the value is $100,000 or more, the violation is a third-degree felony.
 {¶ 29} In the present case, appellant was found guilty of two counts of Medicaid fraud. In the count related to Verhoff, appellant was found guilty of a third-degree felony. In the count related to Firestone, appellant was found guilty of a fourth-degree felony. Appellant concedes that evidence existed for which the jury could have found she overbilled for amounts constituting fifth-degree felonies, based upon witness testimony and her own statements to investigators. However, she claims that Wozniak's testimony was insufficient to calculate the true amounts of loss because he was not an expert. We disagree.
 {¶ 30} Wozniak testified that, based on calculations derived from service plans, claim forms, remittance advices, a credit card charge slip, banking records, appellant's nursing flow sheets, his interview with appellant, and other witness interviews, appellant provided approximately three hours of services per week to Verhoff from June 18, 2000 to December 30, 2002. Thus, Wozniak calculated that appellant was paid $175,089 by Medicaid for services she did not provide to Verhoff during this period. With regard to Firestone, Wozniak testified that, based on the same documents and interviews with appellant and other witnesses, he determined appellant provided no services to Firestone on any Sundays from July 1, 2000 to August 31, 2002, although she billed Medicaid for them. Thus, Wozniak calculated that appellant was paid $7,968.61 by Medicaid for services she did not provide to Firestone during this period.
 {¶ 31} We do not believe the testimony provided by Wozniak as to the values was the type for which an expert was required. When an issue of fact is within the experience, knowledge, and comprehension of the jury, expert opinion testimony on that issue based upon scientific, technical or other specialized knowledge is unnecessary and inadmissible, since it would not assist the jury to understand evidence or to determine a fact in issue. Stelma v. Juguilon (1992), 73 Ohio App.3d 377, 384. Jurors are supposed to be competent in the ordinary and common knowledge of mankind and peculiarly qualified to draw proper conclusions from facts before them. Worrell v. Norfolk W. Ry. Co. (1994), 94 Ohio App.3d 133,139.
 {¶ 32} In the present case, Wozniak's testimony was based upon basic information he gathered from witnesses and documents. All the documents he used in calculating the sums were admitted into evidence and available to the jury, and all of the witnesses he interviewed also testified at trial. Further, the resulting values were derived using elementary mathematical calculations. Nothing more than addition, subtraction, and multiplication was needed to determine the totals. The testimony and calculations at issue here were within the common knowledge and experience of jurors, not requiring knowledge beyond the comprehension of the layperson, and, therefore, expert testimony was not required. SeeCorporate Exchange Bldgs. IV V, L.P. v. Franklin Cty. Bd. of Revision
(1998), 82 Ohio St.3d 297 (J. Stratton, dissenting) (no expert testimony was necessary to explain or substantiate what amounted to a simple mathematical calculation). Wozniak's testimony was admissible to present the values and the evidence he used to total them. Wozniak was not giving an "opinion" as to the value; rather, he was summarizing the facts he obtained during his investigation and the values that the jury could calculate using such facts.
 {¶ 33} In addition, relevant evidence generally is admissible as long as its probative value is not substantially outweighed by its potential prejudicial effect. Evid.R. 402 and 403(A). Evid.R. 701 limits the admissibility of opinions by lay witnesses, but lay witnesses generally may testify to relevant, non-prejudicial matters within their personal knowledge. Evid.R. 602. Wozniak's testimony was relevant, and the values he calculated were within his personal knowledge based upon facts he obtained through his investigation. As the values were directly derived from his own investigation, they also were not speculative. Therefore, we find the jury's verdict as to the value of the funds obtained by appellant in committing Medicaid fraud was not against the manifest weight of the evidence or based upon insufficient evidence. For these reasons, appellant's third assignment of error is overruled.
 {¶ 34} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus and Klatt, JJ., concur.