[Cite as *State v. Sparks*, 2014-Ohio-5788.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CHELLIE N. SPARKS

    Appellant

C.A. No.    27287

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 13 11 3237(A)

DECISION AND JOURNAL ENTRY

Dated: December 31, 2014

WHITMORE, Judge.

{¶1}    Appellant, Chellie Sparks, appeals from her conviction in the Summit County Court of Common Pleas.  This Court affirms.

I

{¶2}    On November 20, 2013, the Macy's store at Summit Mall reported to police that a woman had just shoplifted from its store.  A Macy's loss prevention specialist described the shoplifter and the car that she had left in.  Within five minutes, police located the car, which was a rental.  The car contained three occupants.  Sparks was driving the vehicle.  Kamala Colbert was in the front passenger seat, and Ronald Jackson was in the back seat.

{¶3}    Officer Abro Washington asked Sparks for her identification.  Sparks, whose first name is Chellie, responded by telling him that her name was "Bernice Sparks" and giving him a social security number.  Officer Washington checked the number on his computer, but it came back belonging to a man.  Officer Washington told Sparks that the information did not come

back as hers. At that point, she replied that she was nervous and may have provided the wrong social security number. She again stated that her name was "Bernice Sparks" and provided a date of birth. When Officer Washington put this information into his computer, the picture did not match Sparks. When Sparks' identity was finally determined, the officers learned that she was driving under suspension.

{¶4} Officer Mark Schlegel conducted an inventory tow search. In addition to the stolen clothing from Macy's, he found a large number of credit, debit, and gift cards[1] in the vehicle. Eight[2] credit cards were found in Sparks' purse, nine cards were found in Colbert's purse, eighty-five cards were found in the center console, and two cards were found under the radio. The number of cards aroused the officers' suspicions that they might not be legitimate. Colbert matched the description of the shoplifter and was charged with theft and forgery.

{¶5} The credit cards that were found in Sparks' purse included two MasterCards in her name, a MasterCard in the name of Lashonda Lomas, three Visa cards in her name, one Visa card with no name, and a Visa card in Colbert's name. The three Visa cards in Sparks' name and the one with no name were allegedly given to her from a man named "Mock" as payment for driving Colbert and Jackson from Columbus to Akron.

{¶6} An officer took some of the cards into a nearby Giant Eagle in an effort to determine if they were forgeries. After three or four cards would not "authorize" a transaction, the officer was able to get two cards, one from each woman's purse to authorize. The last four

---

[1] In this opinion, we will use the terms "card" and "credit card" interchangeably to refer to any of these various types of cards. *See* R.C. 2913.01(U) (defining "[c]redit card" as "includ[ing], but [] not [being] limited to, a card, code, device, or other means of access to a customer's account for the purpose of obtaining money, property, labor, or services on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine.").

[2] Ten cards were found in Sparks' purse, but two arguably were not "credit cards."

digits that printed on the receipts did not match the last four digits on the front of the respective cards. Based on this, the officers determined the cards were "not genuine" and had "been cloned."

{¶7} Officer Schlegel notified Detective Dave Zampelli that about 105 cards had been found and, based on the results from the store, at least two of the cards had account numbers encoded in the magnetic strips that did not match the numbers on the fronts of the cards. As part of Detective Zampelli's investigation, he ran all of the cards through a reader that police typically use for scanning the magnetic strip on the back of a driver's license. According to Detective Zampelli, the numbers encoded in the magnetic strips on the backs of four cards found in Sparks' purse, eighty-four cards found in the center console, and both cards found under the radio did not match the numbers on the fronts of those cards. In addition, using a secure link that MasterCard provided him, he determined that 22 of the 24 MasterCards found in the center console had been used. He was unable to determine whether any of the Visa cards had been used.

{¶8} Sparks was indicted on one count of forgery in violation of R.C. 2913.31(A)(2)/(3). Sparks was also indicted on one count of driving under suspension. Sparks pleaded guilty to driving under suspension, and her forgery charge proceeded to a jury trial. The jury found Sparks guilty of forgery, a fifth-degree felony. The trial court sentenced Sparks to a definite term of twelve months of incarceration on her forgery conviction and six months on her driving under suspension conviction, to be served concurrently.

{¶9} Sparks now appeals raising three assignments of error for our review.

II

Assignment of Error Number One

THIS CONVICTION MUST BE OVERTURNED AS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE AND THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SUPPORT A GUILTY VERDICT.

**{¶10}** In her first assignment of error, Sparks contends that the State presented no evidence that she: (1) produced the cards, (2) used the cards, or (3) knew they were forged. We disagree.

**{¶11}** Although Sparks captions this assignment of error in terms of sufficiency and manifest weight and has cited the legal standard for each, she has not developed a manifest weight argument. Under a manifest weight challenge, an appellate court reviews the record to determine whether the trier of fact lost its way in resolving conflicts in the evidence. *See State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Within this assignment of error, Sparks has not provided any citations to the record, nor has she directed our attention to conflicts in the evidence. *See* App.R. 16(A)(7); *see also State v. Hobbs*, 9th Dist. Summit No. 24764, 2010-Ohio-420, ¶ 23 (declining to address allegation that conviction was against the manifest weight of the evidence where appellant failed to indicate the parts of the record supporting such a conclusion). Rather, Sparks alleges there was "no evidence that [she] ever used these cards[,]* * * no evidence that she produced these cards[, and] * * * no evidence that she knew that these cards were forged." Lack of evidence to support an element is a sufficiency issue. *State v. Salmons*, 9th Dist. Summit No. 27108, 2014-Ohio-3804, ¶ 23. Accordingly, we limit our review to the sufficiency argument Sparks raises.

**{¶12}** A sufficiency challenge questions whether the State met its burden of production at trial. *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 5. Sufficiency is

"that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether a conviction is supported by sufficient evidence is a question of law, which is reviewed de novo. *Id.* "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶13} Sparks was convicted of forgery in violation of R.C. 2913.31(A)(2)/(3), which provides:

> No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do *any* of the following:
>
> * * *
>
> (2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed; [*or*]
>
> (3) Utter, *or* possess with purpose to utter, any writing that the person knows to have been forged.

(Emphasis added.). To "'[f]orge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct." R.C. 2913.01(G). A "[w]riting" can be any of several items enumerated in R.C. 2913.01(F) including a "credit card." The definition of "[u]tter" includes "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

{¶14} First, Sparks argues that the State presented no evidence that she produced, i.e., forged, the cards. Having reviewed the record, we agree. But, R.C. 2913.31(A) is phrased in the

disjunctive. To support a conviction, the State could prove that Sparks: (1) forged a credit card, or (2) uttered a credit card that she knew was forged, or (3) possessed with purpose to utter a credit card that she knew was forged. *See* R.C. 2913.31(A)(2), (A)(3), (C)(1)(a). Consequently, the State was not required to prove Sparks "produced" the cards if it proved that she either uttered, or possessed with a purpose to utter, a card knowing that it was forged.

{¶15} Sparks, next, argues there was no evidence that she used, i.e., uttered, any of the cards. According to Sparks, she could only be convicted of complicity to forgery because "the passenger in the car is the only person suspected of using the cards." Sparks does not indicate in her brief which passenger she alleges is "the only person suspected of using the cards." Nor does she include any citation to the record to aid in discerning her argument. *See* App.R. 16(A)(7).

{¶16} In our review of the record, we note that, during the course of his investigation, Officer Schlegel learned that Jackson, who was the passenger in the back seat of the car, had attempted to use several Visa cards at Macy's before finding one that worked. Colbert, who was the front seat passenger, was arrested for shoplifting from that same store. Detective Zampelli testified that 22 of the MasterCards that were found in the center console of the car had been used. Neither Jackson's attempted use of several Visa cards nor Colbert's alleged shoplifting leads to the conclusion that "the passenger in the car is the only person suspected of using the cards." Moreover, "[t]he state is not required to eliminate all possibilities regarding interpretations of the evidence to meet the sufficiency standard." *State v. Powell*, 8th Dist. Cuyahoga No. 82054, 2003-Ohio-4936, ¶ 15. Viewing the evidence in the light most favorable to the prosecution, the jury could have found that Sparks, who was driving the car, had used the MasterCards that were found in the center console.

{¶17} Furthermore, even if she did not use any of the credit cards, Sparks could be convicted of forgery if she possessed with the purpose to utter a credit card knowing it to have been forged. *See* R.C. 2913.31(A)(3). Sparks does not contend that the State failed to demonstrate that she possessed the cards and had the purpose to utter them. She limits her argument, under this prong, to whether the State presented evidence that she knew any of the credit cards were forged.

{¶18} "A person has knowledge of circumstances when [s]he is aware that such circumstances probably exist." R.C. 2901.22(B). "[B]ecause a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case." *State v. Weese*, 9th Dist. Summit No. 23897, 2008-Ohio-3103, ¶ 13. "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus.

{¶19} The State presented the testimony of three witnesses – Officer Abro Washington, Officer Mark Schlegel, and Detective Dave Zampelli. Officer Washington's testimony provided background information regarding how the officers came in to contact with Sparks and the other passengers of the vehicle. He also testified that Sparks initially provided him with false information regarding her identity, and that, upon learning her actual identity, he arrested her for driving under suspension.

{¶20} Officer Schlegel testified that Sparks was driving a rental car in which Colbert and Jackson were passengers. Officer Schlegel testified that he found a large number of credit cards in Sparks' purse, Colbert's purse, and the rental car. Officer Schlegel testified that the large number of cards caused the officers to suspect that they were forged. Officer Schlegel explained that an officer took some of the cards into a nearby Giant Eagle to investigate whether

they were forged. After several cards would not authorize, one card from each woman's purse authorized, but the number on the receipt did not match the number on the front of the card, indicating it was forged. Officer Schlegel identified the Giant Eagle receipt, each of the cards found in Sparks' purse, and each card found in the center console of the car.

{¶21} Detective Zampelli testified that Officer Schlegel notified him that approximately 105 cards had been found and, at least, two had numbers that did not match. Detective Zampelli further testified that he used a card reader from a police cruiser to read the magnetic strips on the backs of all the cards. For each card, he compared the number on the back to the number on the front. He testified that 84 of the 85 cards found in the center console and both cards found under the radio had numbers that did not match. He also testified that four Visa cards found in Sparks' purse had numbers that did not match. Detective Zampelli testified that Sparks told him that an individual named "Mock" gave her the four forged cards that were found in her purse as payment for driving Colbert and Jackson to Akron. Three of those cards had the name "Chellie Sparks" embossed on them and the remaining card did not have a name on it.

{¶22} Viewed most favorably to the prosecution, the large number of cards found in the car supports an inference that Sparks knew that they were forged. In addition, Sparks claimed to have received four cards as payment from "Mock." The jury could reasonably infer that "Mock" had forged the cards and that Sparks, under the circumstances, knew that they were forged. "It is unlikely that someone would forge a [credit card with Sparks' name], and get that [card] into [Sparks'] hands, simply as a random criminal act of kindness toward [Sparks]." *See State v. Crowley*, 2d Dist. Clark No. 2002-CA-94, 2003-Ohio-4319, ¶ 13.

{¶23} Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found that Sparks uttered, or possessed with a purpose to utter, a credit card that

she knew was forged. *See* R.C. 2913.31(A)(3). Thus, there was sufficient evidence to convict Sparks of forgery.

**{¶24}** Sparks' first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE STATE'S WITNESS TO TESTIFY ABOUT UNRELIABLE, SCIENTIFIC INFORMATION OBTAINED VIA A CARD READER.

**{¶25}** In her second assignment of error, Sparks argues that the trial court erred in permitting Detective Zampelli to testify regarding the card reader he used to read the magnetic strips on the backs of the credit cards. She continues that, without Detective Zampelli's testimony, the State cannot establish an essential element of the crime, namely that the cards were forged. We disagree.

**{¶26}** The decision to admit or exclude evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. We will not overturn such a decision "absent a clear abuse of discretion that produced a material prejudice to the defendant." *State v. Roberts*, 156 Ohio App.3d 352, 2004-Ohio-962, ¶ 14 (9th Dist.). An abuse of discretion indicates that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶27}** Detective Zampelli testified that he used the card reader from a mobile data terminal to read the magnetic strips on the backs of the credit cards. Detective Zampelli explained that each Fairlawn police cruiser has a mobile data terminal, which is essentially a laptop computer equipped with a card reader. He averred that the card reader is "[f]or reading magnetic strips" and acknowledged its primary function is reading drivers' licenses. According to Detective Zampelli, when he scanned the magnetic strip on each credit card, a Word document

displayed the account number contained in the magnetic strip. He, then, compared the account number displayed in the Word document to the number contained on the front of the card. Detective Zampelli identified which cards had numbers that did not match, including four cards from Sparks' purse, identified as State's Exhibits 1, 2, 3, and 4.

{¶28} Sparks objected arguing, inter alia, that Detective Zampelli was offering an expert opinion. The assistant prosecutor responded, "He's not giving an opinion. He talks about what he did. It goes to weight, not admissibility." The distinction between factual testimony and opinion testimony is often close. *See Jedlicka v. McClure*, 11th Dist. Ashtabula No. 2008-A-0017, 2008-Ohio-6555, ¶ 34-40 (permitting testimony of lay witness concerning data retrieved from a car's electronic control module). Law enforcement officials are generally permitted to testify regarding their observations and the conduct of their investigations. *See State v. Thomas*, 9th Dist. Summit No. 26893, 2014-Ohio-2920, ¶ 24-27 (permitting officer and paramedic to testify regarding observations at crash scene indicating that the defendant was the driver); *see also State v. Corrai*, 10th Dist. Franklin No. 04AP-599, 2005-Ohio-1156, ¶ 31-33 (testimony summarizing facts obtained during investigation and values derived from elementary mathematical calculations did not amount to expert testimony). Sparks challenges Detective Zampelli's testimony regarding the card reader, in part, because he had not previously used one. But given that the readers are installed in every Fairlawn police cruiser and Sparks did not challenge their ability to read magnetic strips on drivers' licenses, we cannot say that the trial judge abused her discretion in permitting Detective Zampelli's testimony.

{¶29} The trial judge noted that Sparks had not objected to Officer Schlegel's testimony concerning the Giant Eagle transaction. Officer Schlegel testified that, in order to investigate whether the cards were forged, some of the cards were taken to Giant Eagle to see if they would

"authorize" to make a purchase. According to Officer Schlegel, an officer "ran three or four cards before he got one to authorize." Officer Schlegel explained if an account had been canceled or nonexistent, the card would not "authorize." Officer Schlegel further explained that when a card is run through the reader at the store, the receipt will print out the last four digits that are encoded in the magnetic strip on the back. If the last four digits on the receipt do not match the last four digits on the card, the card is "not genuine, or it's been cloned." Officer Schlegel explained that a card can be "[r]e-encoded [which] would be the removal of the numbers that are on the back of the magnetic strip [a]nd then [using] an encoder [to] be able to put numbers on the back of it to not be genuine, or to be off someone else's account."

{¶30} Officer Schlegel verified that the receipt admitted into evidence as State's Exhibit 11 was from the transaction made at Giant Eagle with the card labeled State's Exhibit 4. Officer Schlegel identified State's Exhibit 4 as a Visa card found in Sparks' purse. In addition to Officer Schlegel's testimony, the jury could directly compare the numbers on the card and the receipt, which were admitted into evidence. The last four digits on this Visa card are "9156" and the last four digits on the receipt are "5636." Thus, even without Detective Zampelli's testimony, the evidence demonstrated that the card taken into Giant Eagle was forged.

{¶31} Sparks claims she was prejudiced by Detective Zampelli's testimony because, according to Sparks, the State could not prove that the cards were forged without his testimony. But, as Sparks was charged with and convicted of only one count of forgery, and as Detective Zampelli's testimony regarding the card introduced as State's Exhibit 4 was merely cumulative of Officer Schlegel's testimony regarding that same card, Sparks has failed to demonstrate that she was prejudiced. *See State v. Smith*, 9th Dist. Wayne Nos. 01CA0039 & 01CA0055, 2002-Ohio-4402, ¶ 73 ("as the evidence regarding the results of [a canine's search] was merely

cumulative of more compelling evidence * * *, the admission of such evidence was not prejudicial.").

**{¶32}** Sparks' second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED JUROR 17 TO REMAIN ON THE JURY AFTER HE ADMITTED TO BEING A FAMILY MEMBER OF A STATE'S WITNESS.

**{¶33}** In her third assignment of error, Sparks argues that Juror 17 should have been excused partway through trial when it was learned that he was related to a witness in the case. We disagree.

**{¶34}** "If, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty, the court may order him to be discharged." R.C. 2945.29. "[O]nce the trial has commenced, the trial court need not remove a juror under R.C. 2945.29 unless it finds actual bias on the part of that juror." *Chillicothe v. Payne*, 4th Dist. Ross No. 99CA2483, 2000 WL 1572876, *3 (Sept. 18, 2000). A trial court's decision to dismiss or retain a juror is reviewed under an abuse-of-discretion standard. *State v. Williams*, 6 Ohio St.3d 281, 287-289 (1983). An abuse of discretion indicates the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore*, 5 Ohio St.3d at 219.

**{¶35}** In the instant matter, after Officer Washington testified, Juror 17 informed the court that he had recently become related to one of the officers involved in the case. During his testimony, Officer Washington had mentioned that Officer Schlegel was also a responding officer. Juror 17 recognized the name and notified the court. The court, assistant prosecutor, and defense attorney then met in chambers and questioned the juror. The juror informed them that his sister had gotten married approximately three months earlier. He explained the relationship,

"My sister was married to my brother-in-law, whose sister is married to Officer Schlegel." The juror said that he recognized the name, but he did not recognize the officer in the courthouse that day. The court asked the juror if he would view Officer Schlegel as more credible due to the relationship, and he answered that he would not. When asked if he could remain fair and impartial, he responded that he could.

**{¶36}** Sparks argues that Juror 17 should have been excused pursuant to R.C. 2313.17(B)(7). R.C. 2313.17 addresses for cause challenges during jury selection. Whether a juror could have been removed for cause during voir dire is a factor the court considers when determining whether to discharge a juror under R.C. 2945.29. *See Payne* at *3. "The trial court's failure to remove for cause a potential juror who is familiar with the family of a party or the family of a witness does not amount to an abuse of discretion when the potential juror indicates that he can remain fair and impartial." *Nolan v. Conseco Health Ins., Co.*, 7th Dist. Jefferson Nos. 07 JE 30 & 07 JE 31, 2008-Ohio-3332, ¶ 144.

**{¶37}** In the present matter, the juror and the witness had recently become related by marriage. The trial court considered the relationship "[t]enuous." The juror did not recognize the witness in the courthouse; he only recognized the name. When questioned, the juror averred that he could remain fair and impartial. The trial court was in the best position to observe the juror's demeanor and evaluate his responses. *See Williams*, 6 Ohio St.3d at 288. The trial court did not abuse its discretion in denying Sparks' request to discharge Juror 17.

**{¶38}** Sparks' third assignment of error is overruled.

### III

**{¶39}** Sparks' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT


HENSAL, P. J.
CONCURS.

MOORE, J.
CONCURRING IN JUDGMENT ONLY.

{¶40} I concur in the majority's decision as to the third assignment of error. I also agree that the conviction of Ms. Sparks on a single count of forgery was based upon sufficient evidence. As to the second assignment of error, the record demonstrates that the detective lacked a proper foundation upon which to testify regarding the running of credit cards through the

mobile data terminal, as he had never used them before for any purpose, and their primary use in patrol cars was for reading drivers' licenses. Nonetheless, I concur in the judgment because the State produced other admissible evidence to support the conviction, namely, the testimony of the officer to having made a purchase at Giant Eagle with one of the cards taken from Ms. Sparks' purse, together with the evidence that the receipt from the store did not match the number on the card. The circumstantial evidence produced by the State was sufficient to support Ms. Sparks' knowledge that the card was forged.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.